**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

HOLLY D. COFFARO,

        Plaintiff,

vs.                          Case No:  3:12-cv-1081-J-99MMH-MCR

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

## REPORT AND RECOMMENDATION[1]

      This cause is before the Court on Plaintiff's appeal of an administrative decision denying her application for Supplemental Security Income.  The Court has reviewed the record, the briefs, and the applicable law.  For the reasons set forth herein, it is **RECOMMENDED** that the Commissioner's decision be **AFFIRMED**.

## I.  PROCEDURAL HISTORY

      Plaintiff filed an application for Supplemental Security Income benefits on August 27, 2009, alleging disability beginning August 28, 2006.  (Tr. 98-103, 119).  The Social Security Administration denied Plaintiff's application initially on January 5, 2010, and again upon reconsideration on April 28, 2010.  (Tr. 67-72).  On January 18, 2010, Plaintiff requested a hearing before an administrative law judge ("ALJ") and her case was heard November 4, 2010.  (Tr. 41-64, 73-75).  On November 18, 2010, the ALJ

---

[1] Any party may file and serve specific, written objections hereto within FOURTEEN (14) DAYS after service of this Report and Recommendation.  Failure to do so shall bar the party from a de novo determination by a district judge of an issue covered herein and from attacking factual findings on appeal.  See 28 U.S.C. §636(b)(1); Rule 72(b), Fed.R.Civ.P.; and Local Rule 6.02(a), United States District Court for the Middle District of Florida.

issued a decision finding Plaintiff not disabled.  (Tr. 21-36).  Plaintiff requested review

by the Appeals Council, which was denied on August 3, 2012.  (Tr. 1-7, 18-20).

Accordingly, the ALJ's November 18, 2010 decision is the final decision of the

Commissioner.  Plaintiff filed her Complaint in the United States District Court on

October 9, 2012.  (Doc. 1).

## II.    NATURE OF DISABILITY CLAIM

### A.    <u>Basis of Claimed Disability</u>

Plaintiff claims to have been disabled since August 28, 2006, due to a tail-bone

and lower back injury, chronic pain in her hip, HIV, high blood pressure, arthritis in her

hands and hip, asthma and sinus problems, and migraine headaches.  (Tr. 158).

### B.    <u>Summary of Evidence Before the ALJ</u>

Plaintiff was born January 26, 1972, and was 38 years of age on the date the

ALJ's decision was issued.  (Tr. 36, 119).  Plaintiff attended school through the tenth

grade and had past relevant work experience as a sales clerk.  (Tr. 45, 122).  The

following provides a brief summary of Plaintiff's medical history.

On April 28, 2006, Plaintiff was involved in a slip and fall accident in which she

injured her coccyx and lower back.  (Tr. 262, 275).  Plaintiff received treatment from Dr.

Stacy Spivack Gross, M.D., of the Medwell Medical Center in Jacksonville.  (Tr. 262-

85).  Dr. Gross's treatment notes assessed tenderness and pain in Plaintiff's lower back

with a decreased range of motion.  (Tr. 263-69).  On June 6, 2006, Dr. Thomas

Paganucci, M.D., performed an MRI of Plaintiff's lumbar spine, which was characterized

as unremarkable.  (Tr. 272).  On August 25, 2006, Dr. Gross administered a caudal

epidural steroid injection to relieve Plaintiff's pain.  (Tr. 270).  An examination note dated

August 28, 2006 reported Plaintiff's symptoms persisted after the injection, and Plaintiff required additional pain management. (Tr. 280). In a letter dated November 15, 2006, Dr. Gross opined Plaintiff had reached maximum medical improvement under her care, and she assigned Plaintiff a five percent permanent impairment rating. (Tr. 262, 275).

On April 15, 2009, Plaintiff reported to Shands Jacksonville Medical center where she was examined by Dr. Timothy Sternberg, D.M.D, M.D. (Tr. 328-34). Plaintiff's chief complaints concerned pain in her coccyx and sacrum. (Tr. 332). Musculoskeletal examination revealed tenderness in Plaintiff's lower lumbar spine with no deformities, scoliosis, or exaggerated kyphosis. (Tr. 334). Dr. Sternberg prescribed 50 mg Tramadol to manage Plaintiff's pain, ordered an x-ray of Plaintiff's sacrum and coccyx, and advised Plaintiff to exercise for at least thirty minutes each day. (Tr. 334-35). Plaintiff was directed to return for a follow-up evaluation in eight to ten weeks. (Tr. 335).

On June 25, 2008, Plaintiff returned to Shands for her follow-up evaluation with Dr. Sternberg. (Tr. 330-31). Dr. Sternberg reviewed Plaintiff's x-rays and noted they showed hemisacrilization of Plaintiff's lumbosacral junction with pseudoarthrosis and degenerative changes in her lumbosacral region. (Tr. 330). Plaintiff reported the Tramadol was not effective in providing pain relief, and Dr. Sternberg advised Plaintiff to return to managing her pain with Lortab and Lidoderm patches. (TR. 330-31). Dr. Sternberg also prescribed 250 mg Naproxen and suggested sacrococcygeal ligament injections may be appropriate. Id. Plaintiff agreed to undergo injections at the next available appointment date. (Tr. 331).

On August 13, 2008, Dr. Sternberg administered Plaintiff's sacrococcygeal ligament injections. (Tr. 328-29). Dr. Sternberg noted there were no complications

during the procedure and Plaintiff reported relief of her symptoms. (Tr. 328). Dr. Sternberg recommended Plaintiff continue managing her pain with Lortab and Naproxen, and return for a follow-up exam in eight to ten weeks for repeat injections. (Tr. 328-29). Clinical notes dated October 14, 2009 suggested Plaintiff had experienced an allergic reaction to the steroid injections. (Tr. 362,66). The record does not reflect any additional steroid injection therapy.

On October 6, 2008, Plaintiff treated with Dr. Juan Munoz, M.D., of Shands Jacksonville Medical Center. (Tr. 195-196, 235, 316-327). Dr. Munoz performed an upper gastrointestinal endoscopy of Plaintiff's esophagus, stomach, and duodenum. (Tr. 195-196). Tissue samples were obtained at each of these locations and sent to the Shands pathology department for analysis. (Tr. 196). Dr. Munoz's impressions following the procedure were that Plaintiff had monilial esophagitis, a gastric mucosal abnormality characterized by erythema, gastric petechia, congestive gastropathy, and erythematous duodenopathy. Id. Dr. Munoz recommended Plaintiff await the pathology results and return for a follow-up evaluation. Id.

Plaintiff's tissue samples were reviewed by Dr. Carmela Monteiro, M.D., on October 7, 2008. (Tr. 193-94, 235). Dr. Monteiro indicated examination of the tissue sample obtained from Plaintiff's esophagus showed benign squamous mucosa with no acute inflamation or organisms. (Tr. 194, 235). Examination of the tissue sample obtained from Plaintiff's stomach revealed chronic gastritis with mild activity and numerous Helicobactor Pylori organisms. (Tr. 193, 235). Examination of the tissue obtained from Plaintiff's duodenum showed small intestinal mucosa with no pathological change. Id. A progress note dated April 21, 2009 indicated Plaintiff was treated with

triple therapy and Fluconazole, and Plaintiff experienced relief of her symptoms. (Tr. 193).

On November 19, 2009, Plaintiff was referred to Dr. Ronak Jani, M.D. of Shands Jacksonville Medical Center for neurological evaluation of her migraine headaches. (Tr. 311-12, 341-343). Plaintiff reported experiencing migraines over the last ten years; however, the intensity and frequency of her migraines had increased in the last three to four years. (Tr. 311, 341). Plaintiff rated the intensity of her migraines as varying between four and ten on a scale of ten. Id. Plaintiff indicated her headaches caused her to experience phonophobia, photophobia, and nausea with vomiting. Id. Plaintiff reported her prescriptions for Imitrex and Propanolol did not provide adequate relief of her symptoms. Id. During a neurological exam, Plaintiff was awake, alert, oriented, and her speech and language were intact. (Tr. 312, 342). Motor examination revealed normal tone and strength in Plaintiff's extremities. Id. Sensory examination showed normal response to light touch, joint position, temperature, and vibration sensation in her extremities. Id. Examination of Plaintiff's deep tendon reflexes, coordination, and gait were all normal. Id. Dr. Jani prescribed Topamax for management of Plaintiff's migraines and instructed Plaintiff to begin taking 25 mg each night for two weeks followed by 50 mg each night thereafter. Id. Plaintiff was instructed to return to the clinic in three months for a follow-up evaluation. Id.

On January 1, 2010, state agency medical consultant Dr. James Patty, M.D., prepared a physical RFC assessment based on Plaintiff's medical evidence. (Tr. 345-51). Dr. Patty indicated Plaintiff could occasionally lift twenty pounds, frequently lift 10 pounds, stand or walk for six hours in an eight-hour work day, sit with normal breaks for

six hours in an eight-hour work day, and push or pull hand and foot controls without limitation. (Tr. 345). Dr. Patty also provided Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl. (Tr. 346). The assessment offered no additional manipulative, visual, communicative, or environmental limitations. (Tr. 347-48).

On February 17, 2010, Plaintiff returned to Shands for a follow-up evaluation of her migraine symptoms. (Tr. 376-77, 465-466). Plaintiff was examined by Dr. Scott Silliman, M.D., who reported Plaintiff had successfully titrated up to the 50 mg dosage of Topamax. (Tr. 376, 465). Plaintiff reported she was not experiencing side effects from the medication, her appetite was stable, and she had no paresthesias or vision changes. Id. Plaintiff also reported she had experienced only a few mild headaches since her last visit and was pleased with the Topamax. Id. Plaintiff was instructed to continue managing her migraines with Topamax and return for a follow-up evaluation in three months. Id.

On April 23, 2010, state agency consultant Dr. P.S. Krishnamurthy, M.D., prepared a second RFC assessment based on Plaintiff's medical records. (Tr. 382-89). Dr. Krishnamurthy found Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand or walk for six hours in an eight-hour work day, and sit with normal breaks for six hours in an eight-hour work day. (Tr. 383). The assessment indicated Plaintiff could frequently climb ramps and stairs, balance, kneel, crouch, and crawl. (Tr. 384). The assessment limited Plaintiff to occasional climbing of ladders, ropes, or scaffolds. Id. Dr. Krishnamurthy offered no additional manipulative, visual, communicative, or environmental limitations. (Tr. 385-86).

On April 30, 2010, Plaintiff returned to Shands for a follow-up examination with Dr. Silliman. (Tr. 463-64). Dr. Silliman noted Plaintiff had run out of her prescription for Topamax early due to an increase in her dosage to 100 mg each night. (Tr. 463). Plaintiff's migraines had returned after she ran out of the medication, and Plaintiff reported having a migraine during the evaluation. (Tr. 463-64). Plaintiff was provided with a new prescription for 100 mg Topamax. (Tr. 463). Dr. Silliman noted Plaintiff was tolerating the medication well, and it was controlling her headaches without affecting her appetite. Id. Plaintiff was instructed to return for a follow-up evaluation in three months. (Tr. 464).

On July 8, 2010, Dr. Suparna Jain, M.D., who treated Plaintiff throughout 2009, completed a Medical Report issued by the SSA regarding Plaintiff's allegations of HIV infection. (Tr. 393-95). Dr. Jain noted Plaintiff's HIV infection had been diagnosed through laboratory testing, which confirmed the presence of HIV. (Tr. 393). The form included a list of forty-one opportunistic pathogens and symptoms associated with HIV infection, and requested Dr. Jain check any applicable to Plaintiff's condition. (Tr. 393-94). Dr. Jain did not indicate the presence of any of the opportunistic pathogens or symptoms on the form. Id. Dr. Jain opined Plaintiff would likely experience marked restrictions in her activities of daily living and noted Plaintiff suffered from coccygodynia and lumbar degenerative disc disease. (Tr. 395).

On July 29, 2010, Plaintiff returned to Shands for a follow-up evaluation with Dr. Silliman. (Tr. 461-62). Plaintiff reported experiencing dizziness over the previous two weeks, mostly caused by looking upwards. (Tr. 461). Dr. Silliman indicated dizziness could be a side effect of Topamax and was able to trigger Plaintiff's dizziness during the

examination. (Tr. 461-62). A blood sample was taken to obtain a B12 metabolic profile. (Tr. 462). Dr. Silliman recommended Plaintiff undergo a CT scan of her brain, decrease her dosage of Topamax to 75 mg each night, and return for evaluation in six weeks. (Tr. 462).

On September 13, 2010, Plaintiff returned to Shands for her follow-up evaluation with Dr. Silliman. (Tr. 459-60). Plaintiff reported feeling much better, and indicated the frequency and severity of her headaches had lessened. (Tr. 459). Plaintiff denied paresthesias, vision change, or appetite suppression. Id. Dr. Silliman reviewed Plaintiff's CT scan and metabolic profile and indicated they were both normal. Id. Dr. Silliman recommended Plaintiff continue managing her migraines with 75 mg Topamax each night and return for evaluation in three months. Id.

### C. Summary of the ALJ's Decision

A claimant is entitled to disability benefits if she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or last continuously for a period of at least twelve months. 42 U.S.C. §§ 416(i)(1); 423(d)(1)(A); 20 C.F.R. §416.905. The ALJ must follow a five step sequential process in evaluating a claim of disability. 20 C.F.R. § 416.920(a)(4). First, if a claimant is performing substantial gainful activity, she is not disabled. 20 C.F.R. § 416.920(a)(4)(i). Second, if a claimant does not have any impairment or combination of impairments which significantly limits her ability to do basic work activities, she is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). Third, if the claimant's impairments meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is considered disabled without regard to her

age, education, or work experience.  20 C.F.R. § 416.920(a)(4)(iii).  Fourth, if a

claimant's impairments do not prevent him from doing past relevant work, he is not

disabled.  20 C.F.R. §§ 404.1520(e), 416.920(a)(4)(iv).  Fifth, if the claimant's

impairments (considering her age, education, work experience, and RFC) prevent her

from doing other work that exists in the national economy, she is disabled.  20 C.F.R. §

416.920(a)(4)(v).  Claimants bear the burden of persuasion through the fourth step, but

the burden shifts to the Commissioner at the fifth step.  Bowen v. Yuckert, 482 U.S. 137,

146, 107 S. Ct. 2287 n.5 (1987).

In the instant case, at the first step, the ALJ found Plaintiff's records indicated

she had engaged in substantial gainful activity in 2006 and 2007.  (Tr. 26).  However,

because Plaintiff alleged disability following this period of substantial gainful activity, the

ALJ continued with the five step sequential analysis.  At the second step, the ALJ found

Plaintiff suffered from the following severe impairments: "human immunodeficiency virus

("HIV"); disorders of the spine including lumbar degenerative disk [sic] disease and

coccygodynia; bilateral greater trochanteric bursitis; migraine headaches; hypertension;

chronic obstructive pulmonary disease ("COPD"); and obesity."  Id.  At the third step, the

ALJ found Plaintiff did not suffer from an impairment or combination of impairments

which met or equaled any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

(Tr. 27).  Consequently, the ALJ assessed Plaintiff's RFC and found,

> [T]he claimant has the residual functional capacity to perform
> light work as defined in 20 CFR 416.967(b) with limitations.
> The claimant needs the opportunity to sit or stand at will.
> She must avoid ladders and unprotected heights and must
> avoid the operation of heavy moving machinery.  She must
> avoid concentrated exposure to dust, fumes or gases.  She
> can occasionally bend, stoop, squat, kneel or crawl.

(Tr. 29).  At the fourth step, based on the testimony of a vocational expert ("VE"), the ALJ found Plaintiff was unable to perform her past relevant work.  (Tr. 34).  At the fifth step, the ALJ found Plaintiff was able to perform the duties of an office helper (DOT 239.567-010), a ticket seller (DOT 211.467-030), and a document preparer (DOT 249.587-018).  Accordingly, the ALJ found Plaintiff was not disabled.  (Tr. 36).

## III.  ANALYSIS

### A.  The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence.  Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence must do more than create a mere suspicion of the existence of a fact, and must include relevant evidence which a reasonable person would accept as adequate to support the conclusion.  Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds the evidence preponderates against the Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view

the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560.

**B.**    **Issues on Appeal**

Plaintiff raises three issues on appeal.  (Doc. 16, pp. 9-17).  First, Plaintiff argues the hypothetical question posed to the VE failed to account for all of Plaintiff's limitations.  (Doc. 16, pp. 9-11).  Second, Plaintiff asserts the ALJ's finding that Plaintiff's impairments did not meet or equal Medical Listing 14.08B(2) was not supported by substantial evidence.  (Doc. 16, pp. 11-14).  Finally, Plaintiff contends the ALJ failed to properly consider the impact of the side effects of her prescribed medications on her ability to work.  (Doc. 16, pp. 14-17).  The Court will address each of these claims.

**1.**    **Whether the ALJ erred by posing an incomplete hypothetical question to the Vocational Expert**

Plaintiff first argues the ALJ failed to pose a complete hypothetical question, which included all of her impairments, to the VE.  (Doc. 16, pp. 9-11).  Specifically, Plaintiff asserts the ALJ failed to include limitations, which adequately accounted for Plaintiff's migraine headaches.  Id.  The Commissioner responds by arguing the ALJ properly considered Plaintiff's migraines and found they were adequately controlled with medication.  (Doc. 17, pp. 5-12).

At the fifth step of the sequential evaluation process, the ALJ has the duty of articulating specific jobs the claimant is capable of performing.  Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).  When the claimant's occupational base is limited by non-exertional impairments, "the preferred method of demonstrating that the claimant can perform specific jobs is through the testimony of a vocational expert."  MacGregor v.

Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986). "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999). Where the hypothetical posed to the VE does not include all of a claimant's limitations, a decision based significantly on the VE's testimony is unsupported by substantial evidence. Pendley v. Heckler, 767 F.2d 1561, 1562 (11th Cir. 1985).

In the instant case, the ALJ posed two hypothetical questions to the VE. First, the ALJ posed the following question regarding Plaintiff's past relevant work:

> Assume I find that the claimant is 38-years old and has a tenth grade education. Assume further, I find that she can only occasionally perform light work and is further limited by the following exertional and non-exertional impairments: She needs a sit/stand option. She needs to avoid ladders or unprotected heights. She needs to avoid the operation of heavy moving machinery. She needs to avoid concentrated dust, fumes, or gases. She can only occasionally bend, crouch, kneel, stoop, squat, or crawl. Can the claimant perform any of her past work and if so, which jobs?

(Tr. 62). The VE responded that an individual with the RFC described would not be able to perform Plaintiff's past relevant work. (Tr. 21). Accordingly, the ALJ posed the following question regarding other work:

> Assume the claimant has no skills or semi[-]skills at all and that she is the age I previously described. Has the work experience and education as previously stated. Assume further that she could perform light work and, [h]as the exertion and non-exertion limitations I originally described. Are there any entry level jobs the claimant could perform?

(Tr. 62). The VE responded an individual with this RFC would be able to perform the duties of an office helper, ticket seller, and a document preparer. Id.

Plaintiff contends the ALJ erred by failing to account for Plaintiff's migraine headaches in these hypothetical questions posed to the VE. (Doc. 16, pp. 9-11). Specifically, Plaintiff argues the ALJ erred by not including in the hypothetical posed to the VE the limitations Plaintiff testified that she experienced while having a migraine: nausea, sensitivity to light, and hearing echos.

While the ALJ is required to account for all of Plaintiff's impairments, "the ALJ's hypothetical need not include [Plaintiff's] asserted impairments that are not supported by the medical evidence, or that are controlled or alleviated by medication." Vesy v. Astrue, 353 F. App'x 219, 225 (11th Cir. 2009) (citing Ingram v. Comm'r of Soc. Sec., 496 F.3d 1253, 1270 (11th Cir. 2007) (finding that the hypothetical "need only include the claimant's impairments, not each and every symptom of the claimant")); see also Salazar v. Comm'r of Soc. Sec., 372 F. App'x 64, 68 (11th Cir. 2010) (per curiam) (same). Accordingly, if substantial evidence supported the ALJ's finding that Plaintiff's migraine headaches were adequately controlled by medication, the ALJ was not required to include limitations associated with this impairment in the hypothetical question posed to the VE.

The Court finds substantial evidence supports the ALJ's finding that Plaintiff's migraine headaches were adequately controlled by the Topamax prescribed to her by Dr. Jani and Dr. Silliman. During her examination with Dr. Silliman on February 17, 2010, Plaintiff reported she was pleased with the Topamax, and she had only experienced a couple very mild headaches since her last examination on November 19, 2009. (Tr. 465). On April 30, 2010, Plaintiff indicated her migraines had returned because she had run out of her prescription early. (Tr. 463). Dr. Silliman provided

Plaintiff with a prescription for 100 mg Topamax, noting Plaintiff was tolerating the medication well and her migraines were well managed by the drug. (Tr. 463-64).

On July 29, 2010, Plaintiff again reported her migraines had improved; however, she reported experiencing dizziness, which Dr. Silliman indicated could be caused by Topamax. (Tr. 461). Dr. Silliman reduced Plaintiff's dosage to 75 mg and instructed Plaintiff to return for a follow-up examination in six weeks. (Tr. 461). Plaintiff's examination on September 13, 2010 is the final examination with Dr. Silliman contained in the medical records. (Tr. 459). Plaintiff reported feeling much better with the 75 mg Topamax and denied experiencing side effects such as paresthesias, vision change, or appetite suppression. Id. Plaintiff's metabolic profile and CT scan of her head were both normal. Id. Dr. Silliman's impression was that Plaintiff's migraine headaches were under good control with the Topamax. Id.

Based on the foregoing, the Court finds substantial evidence supports the ALJ's finding that Plaintiff's migraines were well controlled with medication. Accordingly, the ALJ was not required to explicitly account for Plaintiff's migraine headaches in the hypothetical question posed to the VE.

### 2. Whether the ALJ's finding that Plaintiff's impairments did not meet or equal Medical Listing 14.08 was supported by substantial evidence

Plaintiff next asserts the ALJ erred at the third step of his analysis in finding Plaintiff's impairments did not meet or equal any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 16, pp. 11-14). Specifically, Plaintiff contends she satisfied the requirements of Listing 14.08B(2) because she suffered from HIV and the biopsy taken October 6, 2008 at Shands Hospital in Jacksonville tested positive for

monilial esophagitis. (Doc. 16, pp. 11-14). Plaintiff explains "Monilia" is the former name of the genus of fungi now called "Candida," which is referenced in Listing 14.08B(2). Id. The Commissioner responds by arguing substantial evidence supports the ALJ's finding that Plaintiff did not meet the requirements of Listing 14.08B(2). (Doc. 17, pp. 7-8). Specifically, the Commissioner argues the ALJ's finding was supported by the opinions of Drs. Jain, Patty, and Krishnamurthy. Id.

The conditions listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 are impairments which the SSA considers severe enough to prevent an individual from performing any gainful activity, regardless of his or her age, education, or work experience. 20 C.F.R. § 416.925(a). "In order to meet a listing, the claimant must (1) have a diagnosed condition that is included in the listings and (2) provide objective medical reports documenting that this condition meets the specific criteria of the applicable listing and the duration requirement." Wilkinson on Behalf of Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987) (emphasis omitted). The claimant must show that his or her impairment meets all of the specified medical criteria. Sullivan v. Zebley, 493 U.S. 521, 530, 110 S. Ct. 885, 891 (1990) ("An impairment that manifests only some of those criteria, no matter how severely, does not qualify."). To meet the requirements of Listing 14.08B(2), a claimant must provide appropriate documentation showing he or she is infected with HIV and has "[c]andidiasis involving the esophagus, trachea, bronchi, or lungs, or at a site other than the skin, urinary tract, intestinal tract, or oral or vulvovaginal mucous membranes."

In the instant case, Plaintiff contends she satisfied the requirements of Listing 14.08B(2) because she suffers from HIV and a biopsy taken October 6, 2008 at Shands

Hospital in Jacksonville tested positive for monilial esophagitis. (Doc. 16, pp. 11-14). However, in addition to these criteria, Plaintiff was also required to show her condition lasted, or could be expected to last, for a continuous period of at least twelve months. 20 C.F.R. § 416.925(c)(4). Plaintiff's one-time diagnosis of monilial esophagitis does not satisfy this requirement of Listing 14.08B(2). See Yost v. Astrue, 3:07-cv-92, 2008 WL 819334, at *4 (S.D. W. Va. Mar. 25, 2008) (finding a single diagnosis of esphogeal candidiasis, for which medication was prescribed, without any additional diagnoses did not satisfy the durational requirement of Listing 14.08B(2)); Gibbons v. Astrue, No. 5:08-cv-370, 2009 WL 5067757, at *6 (M.D. Fla. Dec. 15, 2009) (noting candidiasis to be a temporary impairment in finding claimant did not meet Listing 14.08).

Additionally, the record contains substantial evidence suggesting the durational requirement of 14.08B(2) was not satisfied in this case. A progress note dated April 21, 2009 provided Plaintiff was treated with triple therapy and Fluconazole and Plaintiff reported she experienced relief of her symptoms and felt "much improved." (Tr. 193). Additionally, Plaintiff's treating physician, Dr. Jain, indicated Plaintiff did not have candidiasis, or any other opportunistic infections in the Medical Report on Adult with Allegation of Human Immunodeficiency Virus Infection dated June 30, 2010 . (Tr. 393-94). Further, as the Commissioner notes, neither Dr. Patty nor Dr. Krishnamurthy found Plaintiff's medical records showed Plaintiff's impairments met or equaled any of the listed impairments provided. (Doc. 17, p. 8). See Hines v. Astrue, No. 3:09-cv-461, 2010 WL 3729833, at* 4 (M.D. Fla. Sept. 17, 2010) (finding ALJ's conclusion that claimant did not meet the requirements of Listing 14.08B(2) was supported by substantial evidence where two consultants found claimant experienced no HIV related

symptoms). Accordingly the Court finds no error in the ALJ's conclusion that Plaintiff's condition did not satisfy the requirements of Listing 14.08B(2).

### 3. Whether the ALJ failed to properly consider the impact of the side effects of Plaintiff's prescribed medications on her ability to work

Finally, Plaintiff argues the ALJ erred in failing to properly consider the side effects of her prescribed medications. (Doc. 16, pp. 14-17). Plaintiff points to her testimony at the administrative hearing, which indicated she experienced drowsiness, dizziness, and dry mouth due to her medications. (Tr. 47). Additionally, Plaintiff testified that she took two naps during the day because of her medication. (Tr. 55). Plaintiff also directs the Court to a questionnaire in which she reported various side effects of her medications, including drowsiness, dizziness, mood changes, and difficulty thinking clearly. (Tr. 130). Finally, Plaintiff argues information sheets submitted by her pharmacist support numerous specific side effects noted throughout the record. (Tr. 138-150). Plaintiff argues the ALJ was required to weigh this evidence and make a specific finding regarding the impact of the side effects on her ability to work. (Doc. 16, p. 17). The Commissioner responds by arguing the ALJ properly considered Plaintiff's alleged side effects and discounted them along with Plaintiff's other subjective complaints. (Doc. 17, pp. 9-10).

Plaintiff is correct that an ALJ has a duty to investigate the possible side effects of medication taken by a claimant. See Cowart v. Schweiker, 662 F.2d 731, 737 (11th Cir. 1981). However, contrary to Plaintiff's assertions, the undersigned believes the ALJ satisfied this duty. This case is very similar to the case of Brooks v. Astrue, 8:06-cv-1815, 2007 WL 4326794, at *4 (M.D. Fla. Dec. 7, 2007). In Brooks, the plaintiff argued

the ALJ erred by failing to directly address her testimony regarding the side effects of her medication and make particularized findings regarding same. In rejecting Plaintiff's arguments, the court observed that the ALJ complied with his obligation to investigate side effects pursuant to Cowart. Brooks, 2007 WL 4326794, at *4. The ALJ questioned the plaintiff during the hearing about the side effects of her medications and his decision indicated that he considered plaintiff's testimony. The court noted that while the ALJ did not make any particularized findings regarding the side effects, it was clear that he implicity rejected them. Id. The same is true here.

During the hearing, the ALJ specifically asked Plaintiff about the medications she was taking and whether they caused her to experience any side effects. (Tr. 46). As stated above, Plaintiff answered that she experienced drowsiness, dizziness, and dry mouth. (Tr. 47). Additionally, upon questioning by her attorney, Plaintiff testified that she needed to take two naps per day because of her medication. (Tr. 55). The ALJ considered and discussed all of these side effects in his decision. (Tr. 31-33). For example, a review of the ALJ's decision shows the ALJ noted Plaintiff took medication and that it made her dizzy and caused her mouth to dry. (Tr. 31). The ALJ also discussed Plaintiff's reported dizziness associated with her prescription for 100 mg Topamax. (Tr. 30-31). Additionally, the ALJ noted Plaintiff's claim that her vision was blurry and that her concentration was not good. (Tr. 29). The ALJ also mentioned Plaintiff experienced a rash after receiving steroid injections to manage her lower back pain. (Tr. 31). Finally, the ALJ also acknowledged Plaintiff's testimony that she took two naps every day due to her medications. (Tr. 32).

Like the ALJ in Brooks, the ALJ in this case did not explicitly state his findings regarding the alleged side effects on Plaintiff's ability to work. However, also as in Brooks, it is clear the ALJ implicitly discounted them, just as he did with Plaintiff's other subjective complaints, because they were not supported by the medical records. Like the claimant in Brooks, Plaintiff rarely made any complaints to her doctors regarding her side effects. Plaintiff points to an ED Record from Shands Jacksonville, which noted Plaintiff experienced "dizziness, diarrhea, nausea, and weariness/fatigue. . . ." (Doc. 16, p.15, Tr. 216-217). Although this record does indicate the identified symptoms, it fails to classify them as side effects from medications. (Tr. 216-17). Rather, it notes a "Final Diagnosis" of "Acute CP." Id. Plaintiff also points to her allergic reaction to the steroid injections administered on November 20, 2008. (Doc. 16, p. 15). However, Plaintiff's allergic reaction has little bearing on Plaintiff's ability to work as it appears the steroid treatments were discontinued and the record does not reflect any repeat injections. See Sheppard v. Astrue, 2:11-cv-854, 2012 WL 1658308, at *6 (M.D. Ala. May 11, 2012) (finding the plaintiff's allergic reaction to a discontinued antibiotic did not offer substantial evidence of the existence of side effects which would affect the plaintiff's ability to work on a regular basis). Similarly, Plaintiff directs the Court to a treatment note dated September 9, 2009, indicating Plaintiff requested to change her headache medication. (Doc. 16, p. 15). However, the side effects of Plaintiff's former headache medications have little bearing on Plaintiff's ability to work as Plaintiff's medication was, in fact, changed. Plaintiff also directs the Court to her complaints of dizziness on July 29, 2010, associated with her use of Topamax. However, as the Commissioner argues, Dr. Silliman's treatment notes dated September 13, 2010 provided Plaintiff was doing

much better with a decreased dosage of the medication and denied experiencing side effects. (Tr. 459).

Finally, Plaintiff also cites to "Information sheets" provided by her pharmacist to bolster her argument, but cites to no authority as to how these records establish a disability. (Doc. 16, p. 16). These records are nothing more than receipts for Plaintiff's medications, accompanied by a statement of possible side effects. (Tr. 138-151). These records do no more than provide a comprehensive list of possible side effects from the medication, and in no way establish that Plaintiff presented with the alleged side effects or their disabling effect on Plaintiff.

"In this circuit, when there is little or no evidence that a claimant is taking medications that cause side effects, the ALJ is not required to elicit testimony or make findings regarding the effect of medications on the claimant." Brooks, 2007 WL 4326794, at *4 (citing Passopulos v. Sullivan, 976 F.2d 642, 648 (11th Cir. 1992) and Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (holding an ALJ's determination on side effects was supported by substantial evidence where the claimant did not complain about side effects and the record did not disclose any concerns about side effects by the doctors examining claimant)). Based on the record in the instant matter, the undersigned is satisfied the ALJ did not err in his consideration of Plaintiff's side effects. See Flynn v. Comm'r of Soc. Sec., 6:06-cv-1186, 2007 WL 4570876 (M.D. Fla. Dec. 27, 2007) ("In the absence of any complaints by Flynn to his physicians regarding medication side effects, and in the absence of any doctor expressing a concern about medication side effects, the failure of the ALJ to inquire further into possible side effects given the record in this case was not erroneous.") (citing French v. Massanari, 152

F.Supp.2d 1329, 1338 (M.D. Fla. 2001)); see also Peacock v. Astrue, 1:07-cv-458, 2008 WL 2074426, at *7 (M.D. Ala. May 15, 2008) (finding no error in ALJ's failure to discuss side effects as no medical evidence that plaintiff complained to his doctors about the side effects); Sanchez v. Astrue, 8:06-cv-1832, 2008 WL 822000, at *4 (M.D. Fla. Mar. 26, 2008) (rejecting plaintiff's argument that ALJ failed to properly consider her side effects because plaintiff failed to point to any evidence in the record that any physician stated her side effects affected her ability to work).

## III. CONCLUSION

For the foregoing reasons, it is hereby **RECOMMENDED** that the Commissioner's decision be **AFFIRMED.**

**DONE** and **ENTERED** in Jacksonville, Florida this __1st__ day of November, 2013.

_Monte C. [signature]_

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

The Honorable Marcia Morales Howard
United States District Judge,

Counsel of Record